**No. 3146**

**Second Circuit**

—

### GOODE v. NORTH SHREVEPORT REALTY CORPORATION
(Two Cases Consolidated)

—

(November 18, 1929. Opinion and Decree.)

—

Cook & Cook, of Shreveport, attorneys for plaintiffs, appellees.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. The two above entitled suits were consolidated in the lower court for purposes of trial, and a separate judgment rendered in each.

The purpose of each suit is to cancel for breach of contract on the part of defendant an agreement on the part of plaintiff to buy and defendant to sell certain im-

movable property and to recover the consideration paid on the contract by the plaintiff with legal interest thereon from judicial demand.

The plaintiff, R. B. Goode, alleges that, on March 15, 1926, he and defendant, North Shreveport Realty Corporation, entered into an agreement in writing whereby he agreed to buy and it to sell three lots of ground, being lots numbered 235, 236, and 238 of Lake View extension number 1, in Caddo parish, La., as shown on a plat thereof recorded in the recorder's office of that parish, for the price of $1,950, or $650 for each lot, payable as follows: $65 on each lot at the time of the execution of the contract, and the balance at the rate of $13 per month for each lot with interest at the rate of 7 per cent per annum on the deferred payments from the date of the contract until paid.

He further alleges that he complied with all of the obligations of the contract to be performed by him, and he had paid on account of the three lots, including the initial payment, a total of $685.

The plaintiff, Mrs. R. B. Goode, alleges that, on the same day, she and defendant entered into an agreement in writing whereby she agreed to buy and it to sell two lots of ground in the same subdivision and according to the same plat, being lots numbered 142 and 143, for the price of $1,300, or $650 for each lot, payable as follows: $65 on each lot at the time of the execution of the contract, and the balance at the rate of $13 per month for each lot, with interest at the rate of 7 per cent per annum on the deferred payments from the date of the contract until paid.

She further alleges that she complied with all of the obligations of the contract to be performed by her and had paid on account of the two lots, including the initial payment, a total of $390.

Both plaintiffs allege that at the time the contracts were entered into the lots described were unimproved and situated in an open field, and that defendant represented to them that the subdivision would be immediately improved, and that it was stipulated in clause seventh of the contracts between them and defendant that:

"It is further agreed that the seller herein will install at its own expense in the hereinafter described subdivision, graveled roads, water lines, gas lines and electric light lines, and that same will be so installed as to be accessible to the property herein described."

Both plaintiffs also allege that, although more than 10 months had elapsed since the date of the contracts, and although they had repeatedly demanded of defendant that it comply with the obligations assumed by it in the clause quoted above, defendant had failed and neglected to discharge the obligations.

And both plaintiffs also allege that they would not have agreed to buy the lots but for the promises contained in clause seventh of the contracts between them and defendant, and that without graveled roads, water lines, gas lines, and electric light lines accessible to the lots they contracted to buy, the lots are worthless to them.

A plea of no cause of action was filed in each case, and, on trial, was overruled, and thereupon defendant answered. The answer is the same in both cases. It is:

"That a large part of the work of installing gravel roads, water lines, gas lines and electric light lines in the Lake View Subdivision has been done by this defendant * * * and that all of said works are works which, in their nature, require a considerable length of time for completion; and * * * that the contract re-

ferred to in plaintiff's petition fixes no time within which said works shall be completed.

"That the representations and obligations undertaken by it in said contract of sale, as set forth in plaintiff's petition, were with reference to the subdivision as a whole, and to the knowledge of petitioner dependent to some extent upon the sale and development of other lots and plots in the subdivision; that no residence or other buildings have yet been constructed on any of the lots in said subdivision; and that there has not been and is not now any immediate necessity for the completion of all of said improvements.

"That defendant's plans and the progress of the works in question and the development of said subdivision have necessarily been interrupted and delayed by the death of one of defendant's directors and principal executive officers, which has necessitated a reorganization of the corporation, but that said reorganization has been effected and arrangements have been made to proceed with the said improvements and to complete the same within a reasonable time."

The prayer in each of the cases is the same—that the demands of the plaintiff be rejected.

On trial there was judgment in favor of the plaintiffs as prayed for, a separate judgment being rendered in each case.

From these judgments the defendant has appealed.

OPINION

In our opinion the petition in each case sets forth a cause of action, and the exceptions were properly overruled. Besides, the exceptions are not pressed in this court and apparently are abandoned.

The evidence clearly established that defendant had not done, and was not doing, even at the date of the trial, anything toward installing graveled roads, or water lines, or gas lines, or electric light lines accessible to the lots it agreed to sell the plaintiffs. In fact, defendant did not contend that the works had been installed accessible to plaintiffs' lots, but only that they had been installed elsewhere in the subdivision, and that the installation was necessarily slow, and that the contracts between it and plaintiffs did not fix any time within which the works should be made accessible to the latter's lots. It admits that:

"Plaintiff made various demands upon it to complete said works immediately, but alleges that said demands were unreasonable, and that it has assured plaintiff that it will proceed with the said works and complete same within a reasonable time."

And counsel, in brief, say:

"No term having been fixed by the parties for the completion of the streets and installation of the utilities, an uncertain term must be implied. And we submit that the cause of action of plaintiff is not for the arbitrary cancellation or rescission of the contract of sale but that his cause of action is for the fixing of the term by this court, within which the defendant shall complete the streets and utilities. On the failure or refusal of the corporation to comply with the decree of the court fixing said time, then the cause of action to rescind the sale would accrue."

So the question presented for our determination is whether defendant is entitled to have a delay fixed within which it shall comply with its contract to install the works in question.

Defendant frankly admits that, in its answer, it "did not pray in the alternative that the court fix a time within which the streets should be built and the utilities installed, but it submits that the most plaintiffs have shown is a right to have a definite, reasonable time fixed within which the gravel roads should be built and the water lines, gas lines and electric light lines laid so as to be accessible to the lots in question."

The articles of the Civil Code applicable to this case are as follows:

"Art. 1926. * * * On the breach of any obligation to do or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.

"Art. 2047. * * * In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolutory condition is an event, not depending on the will of either party, the contract is dissolved of right; but, in other cases, it must be sued for, and the party in default may, according to circumstances, have a further time allowed for the performance of the condition.

"Art. 2050. When no term is fixed by the parties for the performance of the obligation, it may be executed immediately, unless, from the nature of the act, a term, either certain or uncertain, must be applied. * * *".

Defendant advertised that:

"The streets are being rocked and graveled so that it is possible for the lot buyer or investor to build his house at once with all improvements ready for him from the very start."

And that:

"Water, Gas, Electricity, Graded and Graveled streets are all in now."

And plaintiff R. B. Goode testified that the stipulation in clause 7 of the contract that these facilities would be installed and made accessible to the lots he and his wife agreed to buy was one of the principal inducements to them to agree to buy the lots.

On July 12, 1926, plaintiff, R. B. Goode, wrote a letter to defendant calling their attention to the fact that nothing was being done toward complying with clause 7 of the contract, and inquiring when he might expect work on installing the improvements would be begun; and on October 6, 1926, he again brought to its attention the fact that nothing was being done in the premises and notified them "that unless these improvements called for by paragraph 7 of my contract are put in by January 1st, 1927, I shall file suit to cancel the contract and ask for a refund of the money paid to you."

Notwithstanding plaintiffs' demand that defendant comply with clause 7 of its contract, the defendant did nothing, and on February 9, 1927, the present suits were instituted.

If the death of the director and principal executive officer of defendant was a legal excuse for its failure to comply with its contract, that excuse ceased as early as the month of May, 1926, for it was in that month the director and chief executive officer referred to died, and in the same month Mr. P. C. Willis was elected to succeed him in the same offices; and there was ample time between then and January 1, 1927, for defendant to have installed the improvements had it desired to do so.

The trial took place April 8, 1927, and Mr. P. C. Willis, president and a director of defendant, testified:

"Q. Then the failure to make these improvements up to the present time has not been on account of the intention of the company but on account of the financial inability to do so?
"A. I would offer that as largely true —yes."

And although he also testified that, owing to change in the personnel of some of the stockholders of defendant, the defendant was now able to obtain the money needed to construct the improvements stipulated for in its contract with plaintiffs,

he did not testify that defendant actually had the money, or when the work would be begun or when completed.

Under the law and the evidence we do not think defendant was entitled to further delay in which to comply with the contracts on its part. We find no error in the judgments appealed from, and accordingly they are affirmed.